CITIBANK, N.A. and
Citicorp, Plaintiffs,

v.

CITYTRUST and Citytrust Bancorp,
Inc., Defendants.

No. 84 Civ. 3786.

United States District Court,
E.D. New York.

Oct. 26, 1984.

Morgan, Finnegan, Pine, Foley & Lee, New York City, for plaintiffs.

Sage, Gray, Todd & Sims, New York City, Cifelli, Frederick & Tully, Bridgeport, Conn., for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The plaintiffs have moved, pursuant to Rule 65(a) of the Fed.R.Civ.P. for an order preliminarily enjoining defendants from us-ing the name "CITYTRUST" in any manner whatsoever in identifying or referring to the office recently established by the defendants at 510 Broadhollow Road, Melville, New York, or to any other offices which defendants may establish in New York State. The plaintiffs also seek to preliminarily enjoin the defendants from increasing the type, frequency or prominence of any television, radio or print advertising or any other type of promotion or solicitation of business in the State of New York above that existing prior to the opening of their office in New York. A hearing on this motion was held on October 22, 1984 at which some testimony was elicited and arguments presented as supplementation to the extensive affidavits and memoranda of law submitted in support of and in opposition to the motion.

The genealogy of the parties is detailed in the affidavit of Christopher York (as to Citibank) and in exhibit 4 annexed to the affidavit of Jonathan A. Topham and in exhibit A annexed to the affidavit of Robert F. Cahill (as to Citytrust). Suffice it to note for purposes of this determination that Citibank and Citicorp are the owners of federal service mark registrations which are, and at all times pertinent to these proceedings have been, in full force and effect. In addition, the name "Citi" and approximately 50 extensions thereof have also been registered with the United States Patent and Trademark Office. "Cititrust" is not one of those extensions, although some of the plaintiffs' subsidiaries outside the United States have used that name or mark. For example, the affidavit of John Grozier, a Vice President and Fiduciary Compliance Officer of the plaintiffs, reflects that Citibank's wholly owned subsidiary, "Cititrust (Bahamas) Limited" has used the name and mark since 1976. Another wholly owned subsidiary, "Cititrust (Cayman) Limited" has used the name and mark, and a partially owned subsidiary, "CityTrust Banking Corporation" has used the name and mark "CityTrust" in the Phillipines since 1977. (Grozier Affidavit, pp. 6-7).

The defendants have been in the banking business in Connecticut since 1854. From that date until approximately May 1984, when they opened an office in Melville, New York, their banking business was confined to Connecticut with their concentration being primarily in the Southwestern portion of that state. So long as the defendants' business was confined to Connecticut, the business conducted by the parties was "not ... in the same channels of trade, because Citytrust is engaged in a general banking business in its area in Connecticut and neither Citicorp nor Citibank is permitted under federal or state law to engage in such banking services in that area." (Affidavit of Jonathan A. Topham at p. 3).

The defendants applied to the United States Patent and Trademark Office to register the "Citytrust" mark. The plaintiffs, in July 1980, opposed that application on the ground that the Citytrust mark would create confusion with their marks which are registered and to which common law rights are also asserted. The parties estimate that a determination of the registration issue will not be made until 1985 or 1986. This proceeding was commenced after the defendants, for the first time, opened an office in New York at 510 Broadhollow Road, Melville, New York, using the name and mark "Citytrust."

The plaintiffs base their claims for relief on § 32 of the Lanham Act, 15 U.S.C. § 1114 (infringement of service marks and trademarks; § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (false designation of origin); N.Y.G.B.L. § 368–b (infringement of New York registered trademarks); N.Y.G.B.L. § 368–d (injury to business reputation and dilution) and infringement of common law trademark.

■ To obtain a preliminary injunction in this Circuit, the plaintiffs must make "a showing of (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *see also Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78–79 (2d Cir.1981). The moving party has the burden of proving each of those elements. *Robert W. Stark, Jr., Inc. v. New York Stock Exchange, Inc.,* 466 F.2d 743, 744 (2d Cir.1972) (per curiam).

### A. *Likelihood of Success on the Merits*

■ Addressing first the likelihood of success on the merits, it is well established that in a case of trademark infringement, the crucial inquiry is the likelihood of confusion or the likelihood that an appreciable number of ordinarily prudent persons are likely to be misled or confused as to the source of the goods or services in question. *See, e.g., Spring Mills, Inc. v. Ultracashmere House, Ltd.,* 689 F.2d 1127, 1129 (2d Cir.1982). The answer to the crucial inquiry may be found in the many factors we have been instructed to consider in *Polaroid Corporation v. Polaroid Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). Although the factors were utilized in *Polaroid* where the products were different, subsequent cases teach the utility of those factors in cases where the goods or services are competing and notwithstanding the similarity of marks. *See e.g., Vitarroz v. Borde ·, Inc.,* 644 F.2d 960 (2d Cir.1981). That the services and goods offered by the parties here are competing is not seriously disputed. The *Polaroid* factors are:

(1) the strength of the senior user's mark;

(2) the degree of similarity between the two marks;

(3) the proximity of the products;

(4) the likelihood that the senior user will bridge the gap;

(5) actual confusion;

(6) the junior user's good faith

(7) the quality of the junior user's product; and

(8) the sophistication of the buyers.

### 1. *Similarity of Plaintiffs' Marks*

■■■ The degree of protection to be given a trademark is to a large extent dependent upon the strength of the mark. In this context, "strength" refers to the tendency of the mark to identify the source from which the goods or services originate. *McGregor-Doniger, Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). Marks are classified into four categories and in ascending order of strength those categories are: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. The strength of a mark, therefore, is normally dependent on its place upon the ascending scale and also on whether the mark has acquired secondary meaning. *Lambda Electronics v. Lambda Technology, Inc.,* 515 F.Supp. 915, 925 (S.D.N.Y. 1981). Without deciding at this time the specific category into which the plaintiffs' marks may fall, or whether the plaintiffs' marks are properly labeled as being "weak," "very weak," "simply weak," "strong" or "strong enough", *see, e.g., Citibank N.A. v. Citibanc Group, Inc.,* 724 F.2d 1540, 1545 (11th Cir.1984), it is clear that the plaintiffs' marks have acquired a secondary meaning and are entitled to protection. *See, e.g., Stork Restaurant v. Sahati,* 166 F.2d 348 (9th Cir.1948); *American Foundries v. Robertson,* 269 U.S. 372, 381, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926).

### 2. *Degree of Similarity Between The Two Marks*

■■■ The crucial inquiry relevant to this factor is whether a similarity exists which is likely to cause confusion from the vantage point of a prospective consumer. *Exxon Corp. v. Xoil Energy Resources, Inc.,* 552 F.Supp. 1008, 1016 (S.D.N.Y.1981). A designation is likely to cause consumer confusion because it conveys the same idea or stimulates the same mental reaction and in this regard, it is the overall impression of the mark as a whole that must be considered. *See, e.g., Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496 (5th Cir.1979), *cert. denied,* 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979).

In a letter to the Federal Reserve Bank of New York dated October 13, 1978, Jonathan A. Topham, the defendants' chief executive officer, opposed the plaintiffs' application to open a consumer loan office in Westport, Connecticut. In the course of that letter, he alluded to the likelihood of confusion on the part of Citytrust customers in that market area, "Due to the similarity of the names 'Citicorp' and 'Citytrust.'" In an affidavit he submitted in this proceeding, Mr. Topham sought to explain the circumstances surrounding his letter and states:

> "Neither I nor the Federal Reserve Bank ... considered the protest to be one involving a conflict in names of banking institutions in the sense of trademark law. At the time of sending my October 13, 1978 letter, I did not consult trademark counsel as to the technical aspects of trademark law, but was expressing a personal opinion which the Board held was wrong." [1]

Mr. Topham's "personal opinion" is far more relevant than a technical opinion by trademark counsel since his "personal opinion" reflects the impression of the infringing mark upon the prospective consumer, which is precisely what is significant.

■■■ The defendants vigorously contend that the strength of the plaintiffs' mark is in the "I" in Ci*t*i bank or Ci*t*i corp. and that the "Y" in Cit*y* trust precludes any possibility of confusion.

Included in the submissions before the Court was the deposition of Edward C. Kozlowski taken on June 25, 1984 in con-

---

**1.** The name the plaintiffs' subsidiary sought to use in Westport was "Citicorp Person-to-Person Financial Center of Connecticut, Inc." The Federal Reserve Board found no reasonable basis for concluding that there is such similarity between that name and Citytrust as to result in any unfair competition. *See* footnote 13, on page 16 of exhibit 2 attached to Mr. Topham's affidavit.

nection with the proceeding before the Trademark Trial and Appeal Board. Mr. Kozlowski, now retired, was a media consultant who designed the defendants' "Citytrust" mark. At pages 51 and 52 of that deposition, Mr. Kozlowski testified that "Cititrust" would be another name extension for Citibank and when addressed to the ear, the words "Citytrust" and "Cititrust" would be indistinguishable.

"The examination of the similarity of the trademarks, ... does not end with a visual comparison of the marks. Trademarks, like small children, are not only seen but heard. Similarity of sound enters into the calculation of likelihood of confusion." *Grotrian, Helfferich, Schulz, etc. v. Steinway & Sons,* 523 F.2d 1331 (2d Cir.1975).

### 3. *Proximity of the Products*

Where the goods or services in question are competitive, the likelihood of confusion increases. As has already been indicated, the parties here are competitive in the same geographic area.

### 4. *The Likelihood That Plaintiff Will "Bridge The Gap"*

The "bridging the gap" factor refers to two possibilities, one of which is that in this era of corporate diversification, consumers will assume that the parties are either related or one and the same. *See McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1135–1136 (2d Cir.1979). Given the aural similarity of the marks, this factor appears likely to be satisfied.

### 5. *Evidence of Actual Confusion*

Evidence of actual confusion is a strong indicator of a likelihood of confusion. *McGregor-Doniger v. Drizzle, Inc., supra,* 599 F.2d at 1136. The testimony of Vincent Benedetto, as well as the affidavits of Maureen McNamara, Peggy H. Peterson, Myrtle MacNeish and Sandy Keith are probative of this factor.

### 6. *Junior User's Good Faith*

The defendants' state of mind is a factor to consider in balancing the equities. The defendants were aware of the plaintiffs' vigorous opposition to their application to register the "Citytrust" mark before opening their New York office. Relevant, too, in this regard is the minimal investment made by the defendants in advertising their services in their Long Island office (see deposition of Murray Morse, defendants' Senior Vice President, Marketing, September 13, 1984, pp. 44–45); the fact that in 1976–1977 the defendant Bank was "in a very severe low," its number one objective was survival and changing its name to Citytrust was a contributing factor to turning around the fortunes of the bank (see deposition of Edward M. Gleason, defendants' Vice President and Western Regional Manager, June 22, 1984, pp. 112, 114). Those considerations may have more than passing significance for this *Polaroid* factor. *See, E.I. duPont de Nemours & Co. v. Yoshida International, Inc.,* 393 F.Supp. 502, 514 (E.D.N.Y.1975).

### 7. *Quality of Junior User's Product*

The plaintiffs do not attack the quality of defendants' banking and financial services and this factor is, therefore, irrelevant.

### 8. *Sophistication of the Purchasers*

The significance of this factor lies in the relationship the level of sophistication bears to the likelihood of confusion. The testimony of Vincent L. nedetto adduced at the hearing indicated confusion in the mind of a Citibank customer who might fairly be characterized as sophisticated if there is a correlation between accumulation of wealth and sophistication. If confusion was engendered in the mind of a sophisticated consumer, it is logical to infer that confusion would be likely in the minds of unsophisticated consumers. Although I should think the parties might stipulate that banking and financial services are currently used by persons who span the economic, social and intellectual spectrum, for purposes of this proceeding I believe that the plaintiffs' likelihood of success as to this *Polaroid* factor is good.

■ An application of the factors listed in *Polaroid* to the submissions before the Court leads to the conclusion that there is a likelihood that the plaintiffs will succeed on the merits. This Circuit has, however, supplemented the *Polaroid* factors by balancing the conflicting interests of the parties, the nature of the senior user's priority, the senior user's delay in asserting its claim and the harm to the junior user against the benefit to the senior user that would result from the requested injunction. *See, Vitarroz v. Borden, Inc.,* 644 F.2d 960, 966–967 (2d Cir.1981). Most of those supplemental factors have been alluded to. Reference has been made to the priority of marks and the minimal expenditures thus far made in advertising the defendants' New York office. The affidavits and other submissions before the Court establish too that that office is in leased space on the third floor of a multi-tenant building with no exterior signs at or associated with the building (see affidavit of Glenn T. Hall, defendants' Assistant Vice President and Manager of their Long Island Office). No substantial capital expenditure has as yet been made by the defendants and the inference that they are merely testing the waters is a tempting one to draw. Given the likelihood of confusion I find to be present and the tentative entry thus far sought to be made by the defendant into the plaintiffs' market, the balance of hardships and equities tip decidedly in favor of the plaintiffs.

### B. *Irreparable Harm*

Having determined that the plaintiffs are likely to succeed on the merits given the likelihood of confusion, irreparable harm "almost inevitably follows." *Omega Importing Corp. v. Petri-Kine Camera Company,* 451 F.2d 1190, 1195 (2d Cir.1971).

### C. *Laches*

■ The defendants, in addition to contesting the likelihood of confusion and irreparable harm, contend that relief should be denied because the plaintiffs have been guilty of laches. The rule as to laches was succinctly stated in *Cuban Cigar Brands N.V. v. Upmann International, Inc.,* 457 F.Supp. 1090 (S.D.N.Y.1978) as follows, at p. 1096:

"Defendant's proof in its laches defense must show that plaintiff had knowledge of defendant's use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time.

The plaintiffs have opposed the defendants' application to register their mark in 1980 and that opposition proceeding has been litigated before the Trademark Trial and Appeal Board and is still pending. The plaintiffs commenced this action promptly after learning of the defendants' office being opened in New York, and for the reasons already advanced, the defendants will not be unduly prejudiced by permitting plaintiffs to assert their rights.

I shall not dwell upon the plaintiff's claim under N.Y.G.B.L. § 368–d (injury to business reputation and dilution). Suffice it to note that in *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621 (2d Cir.1983) the court held that a cause of action under that statute is established by a showing of possession of a truly distinctive trademark and likelihood of dilution. Neither competition between the parties nor likelihood of confusion are necessary elements of the cause of action, but the defendants' good faith is to be considered in a claim for injunctive relief. Based upon all the proceedings and submissions before me thus far, I find that the plaintiffs have sustained their burden in establishing likelihood of success on the merits of their claims under the anti-dilution statute and the Lanham Act as well as irreparable harm.

Rule 65(d) of the Fed.R.Civ.P. requires that every order granting an injunction shall set forth the reasons for its issuance, which has been done. The Rule also requires that the order be specific in its terms and shall describe in reasonable detail the act or acts sought to be restrained.

Accordingly, the defendants, their officers, agents, servants and employees and

any and all persons in active concert or in participation with them who receive actual notice of this Order by personal service or otherwise are hereby preliminarily enjoined from using the name or mark "CITY-TRUST" in any manner whatsoever in identifying or referring to the office recently established by defendants at 510 Broadhollow Road, Melville, New York 11747, or to any other offices which defendants now or in the future may establish in New York State or to the services performed or capable of performance by defendants at those offices; increasing the type, frequency, or prominence of any television, radio or print advertising or any other type of promotion or solicitation of business in the State of New York above that existing prior to the opening of their office in New York as aforesaid; and plaintiffs must file a bond in the sum of Twenty Five Thousand ($25,-000) Dollars for the payment of such costs and damages as may be incurred or suffered by any party who is found to be wrongfully restrained or enjoined.