CITIBANK, N.A., Citicorp and Citicorp Person-To-Person Financial Center of Connecticut, Inc., Plaintiffs,

v.

CITYTRUST and Citytrust Bancorp, Inc., Defendants.

No. 84 Civ. 3786.

United States District Court,
E.D. New York.

Oct. 1, 1986.

Morgan & Finnegan, New York City, for plaintiffs.

Cifelli, Frederick & Tully, Bridgeport, Conn., Sage, Gray, Todd & Sims, New York City, for defendants.

### MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiffs Citibank, N.A. and Citicorp (collectively "Citibank") brought this action for trademark infringement and related causes of action against defendants Citytrust and Citytrust Bancorp (collectively "Citytrust") alleging that defendants' use of the mark "CITYTRUST" violates plaintiffs' right in their "CITI" formative mark. After a hearing in October 1984, this Court

granted a preliminary injunction against defendants. 596 F.Supp. 369 (E.D.N.Y. 1984). That injunction was subsequently vacated by the Second Circuit Court of Appeals. 756 F.2d 273 (2d Cir.1985). In a Memorandum and Order dated December 23, 1985, this Court denied defendant Bancorp's motion to dismiss and both defendants' motion to transfer this action to the District of Connecticut. Defendants now move for summary judgment on the ground that plaintiffs' action is barred, as a matter of law, by laches and acquiescence.

To establish a laches defense, defendants must show that plaintiff[s] had knowledge of defendant[s'] use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant[s] will be prejudiced by permitting plaintiff[s] inequitably to assert [their] rights at this time.

*Cuban Cigar Brands, N.V. v. Upmann International, Inc.,* 457 F.Supp. 1090, 1096 (S.D.N.Y.1978), *aff'd,* 607 F.2d 995 (2d Cir. 1979). To establish acquiescence, they must prove

conduct on the plaintiff[s'] part that amounted to an assurance to the defendant[s], express or implied, that the plaintiff[s] would not assert [their] trademark rights against the defendant[s].

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 293 F.Supp. 892, 917 (S.D.N.Y.1968), *aff'd,* 433 F.2d 686 (2d Cir.1970), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2305, 29 L.Ed.2d 680 (1971). The acquiescence defense also requires a showing of prejudicial reliance on the part of defendants.

The Court's role in deciding this motion is clear:

[W]hen the court considers a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, ..., with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.

*Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1319 (2d Cir. 1975). *See also Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ("The inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."). As stated below, the Court concludes that disputed material factual issues prevent the determination of both of these defenses without a trial. Thus, defendants' motion will be denied.[1]

I. *Laches*

In discussing the laches defense, the Court should begin by dispelling the suggestion, at least implicit in defendants' presentation, that this issue has already been decided by the Second Circuit in its resolution of plaintiffs' request for a preliminary injunction. Although the Second Circuit found that plaintiffs' delay barred it from being entitled to preliminary injunctive relief, it made clear that the issue was not laches, but rather whether plaintiffs had established the possibility of irreparable harm:

Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction.

*Citibank v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985). In a subsequent decision which quoted the above language, the Second Circuit explained:

Lack of diligence, standing alone, is insufficient to support a claim of laches; the party asserting the claim also must establish that it was prejudiced by the delay.... Lack of diligence, standing alone, may, however, preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of

---

1. In view of the Court's conclusion, it has not addressed each and every argument presented by both parties. These arguments may, of course, be developed at trial.

irreparable harm rather than occasioned prejudice.

*Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir.1985). *See also id.* (reversal of district court's grant of preliminary injunction "does not, of course, bear upon the merits of [plaintiff's] claim for permanent relief").

█ The Court should also address plaintiffs' argument that the incontestability of plaintiffs' marks precludes defendants from asserting either a laches or an acquiescence defense. Plaintiffs rely on *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), in which the Supreme Court held that the defense of lack of secondary meaning, a defense not included among the seven defenses to an incontestable mark listed in 15 U.S.C. § 1115(b), could not be used against a mark that had attained incontestable status. However, the Supreme Court expressly noted that it "need not address ... whether traditional equitable defenses such as estoppel or laches are available in an action to enforce an incontestable mark." 105 S.Ct. at 666 n. 7. In view of the Supreme Court's unwillingness to adopt the result urged by plaintiff, the Court would not be justified in ignoring long-standing precedent in this Circuit to the contrary. *See, e.g., Cuban Cigar, supra,* 457 F.Supp. at 1092 n. 5 (citing cases). *Cf. McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94, 98 (2d Cir.1986) (deeming it "improvident ... to disregard clear judicial precedent in this Circuit based on mere speculation" that the Supreme Court may reach the opposite result).

## A. *Knowledge*

Of the three elements of the laches defense, *see* p. 1012 *supra,* the first, the knowledge element, is most easily decided. Citytrust avers that Citibank has maintained a business relationship with it since 1940, and thus has had knowledge of Citytrust's various names since that time. *See* Defendants' 3(g) Statement at ¶¶ 13–15. Although Citibank questions the legal relevance of that business relationship and of

Citytrust's name changes, it does not significantly dispute this aspect of Citytrust's argument.

## B. *Delay*

█ The question of how long Citibank delayed in taking action against Citytrust, and whether that delay was unreasonable is, by contrast, hotly disputed. Since Citytrust has alleged knowledge on the part of Citibank as far back as 1940, it suggests that the Court attribute to Citibank a delay lasting from that date until 1984, the year in which this suit was commenced. Citibank seeks to narrow this period of alleged delay from both directions.

First, Citibank argues that Citytrust abandoned any rights it may have had to the word "city" and "trust" in combination in 1971, when it became known as City National Bank, and that it may claim such rights only from 1977, when it adopted its current name. Citibank contends that it can establish both aspects of abandonment, that from 1971 to 1977, Citytrust did not use and intended not to resume use of its former "City Trust" mark. *See generally Saratoga Vichy Spring Co., Inc. v. Lehman,* 625 F.2d 1037, 1043–44 (2d Cir.1980).

With respect to intent, plaintiff has submitted defendants' 1971 Annual Report to its shareholders, which clearly indicates that defendants, following a merger with another bank, intended that their new name would wholly replace the prior City Trust name:

> [T]he job of supplanting, in the minds of the public, the names of two of Connecticut's oldest banks with a new identification required a concentrated advertising and public relations effort.... Although "City Trust" and "Waterbury National" continue to linger in the minds of many of our long-time customers, we are making good progress in establishing the City Naitonal Bank of Connecticut as our identification.

Without attempting to rebut this evidence of an intent to stop using the "City Trust" name, defendants respond that their efforts failed and submit evidence that the

"City Trust" name was used during the period in question. Assuming that the public perception of the bank's name is relevant on the issue of abandonment, the Court finds this is a question of fact which would have to be decided at trial. Defendants' assertion that the bank continued to be known as City Trust is rebutted by evidence of the efforts defendants made in attempting to re-establish the Citytrust name in 1977.

Moreover, the Court would question whether this issue is of legal significance. Although defendants have submitted as evidence correspondence from others which uses the name "City Trust," there is no indication that defendants themselves used this name after 1971. Because of *this* non-use, the Court is not prepared, at least on this motion for summary judgment, to charge plaintiffs with any delay in taking action prior to defendants' decision to adopt the name Citytrust in 1977.

Citibank next argues that it should be found to first have taken action against Citytrust not in 1984, but by filing a notice of opposition to defendants' attempt to federally register its Citytrust mark in 1980. This argument relies on the following reasoning:

> While a successful opposition only acts to prevent registration and not use, as a practical matter, it puts the defendant on notice that, at the least, the plaintiff is not going to "sleep on its rights," and indeed, in our view, goes even further and puts the defendant on notice that the opposer also protests its use of the confusingly similar mark.

*Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341, 1367 (E.D.Pa.1972) (footnote omitted), *aff'd*, 480 F.2d 917 (3d Cir.1973). The Court finds this reasoning persuasive, especially in light of the tenor of the proceedings between Citibank and Citytrust before the Trademark Trial and Appeal Board. Statements from both parties in that proceeding, *see* Plaintiff's Brief at 25–26, indicate that although the only issue before the Board was registration, both plaintiffs and

defendants understood that defendants' use of its trademark was ultimately at stake. Given this understanding, the Court is inclined to find that the four years before this action was commenced, during which the opposition proceeding was being litigated, should not be considered a period of prejudicial delay in deciding whether plaintiffs have been guilty of laches.

Defendants offer two reasons why this Court should not adopt the reasoning of *Alfred Dunhill*. First, citing *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), they assert that "[w]ell-established Second Circuit case law indicates that an opposition does not toll continuing laches with regard to use of a mark." Defendants' Reply Brief at 5. Whether or not this proposition is suggested by *Polaroid*, it is not a holding of that case and is certainly not "well established" law that is binding on this Court. There is Second Circuit authority for the proposition that in determining whether a controversy is ripe for adjudication under the Declaratory Judgments Act, "the filing of an opposition ... is not by itself a charge or warning of a future charge of infringement." *Topp-Cola Co. v. The Coca-Cola Co.*, 314 F.2d 124, 126 (2d Cir.1963). However, this holding does not, in the Court's view, prevent it from taking into account the pendency of a hotly-contested opposition proceeding in deciding whether plaintiffs' delay in commencing an infringement action was prejudicial to defendants.

Defendants also argue that *Alfred Dunhill* is distinguishable on the ground that the plaintiff in that case had succeeded in the opposition proceeding prior to bringing suit. This distinction is without significance. The rationale of *Alfred Dunhill* is that commencement of the opposition proceeding put the defendant on notice that its rights to its trademark were at risk. That rationale is not altered by the fact that this dispute was not finally resolved in that forum. *See also Finance Co. of America v. BankAmerica Corp.*, 502 F.Supp. 593,

596 (D.Md.1980) (rejecting such a distinction). Defendants cannot plausibly suggest that this action is not timely, yet would have been had it been brought at an even later date, after the opposition proceeding had been concluded.

### C. *Prejudice*

Having discussed the element of delay, the Court must now turn to what would seem to be the most crucial aspect of the laches issue, whether or not the delay on Citibank's part was prejudicial to Citytrust. Citytrust advances several claims of prejudice. First, it argues that granting relief to plaintiffs in this action will mean the destruction of fifty years of good will that it has accumulated with respect to the names "City Trust" and "Citytrust." The validity of this claim of prejudice is, of course, intertwined with the issue of whether the "City Trust" name was abandoned. If the "City Trust" name was abandoned, then the amount of good will threatened by this litigation would obviously be severely diminished.

Second, Citytrust claims that for the period 1977–1984 it spent over $10,000,000 advertising the "Citytrust" name and $7,000,000 on supplies bearing the name "Citytrust." With respect to advertising costs, it should first be noted that more than half of this money was spent after the opposition proceeding had been commenced. Moreover, as Citibank points out, Citytrust spent over 3.5 million dollars promoting its name in 1985, the year after this action was commenced. *See Affidavit of Murray H. Morse, Jr.* at ¶ 12. Given that Citytrust spent this sum when it knew that its rights to continued use of its name were in question, the Court is hard pressed to conclude without further development at trial that its earlier expenditures were made in reliance on Citibank's inaction. With respect to the cost of supplies, Citibank suggests, and it is a reasonable inference, that much of the expenditures claimed are simply replacement costs for stationery and forms that have already been used or discarded. Moreover, this Court has the power in shaping injunctive relief, should it be granted, to minimize the waste attendant in requiring Citytrust to change its name.

Finally, Citytrust contends that it has been prejudiced by the deaths of two of its officers prior to the filing of this suit. Although these deaths may have made Citytrust's defense of this action more difficult, Citytrust has made no showing, and its vigorous opposition thus far suggests otherwise, that it has been so hindered that Citibank should be denied any relief to which it otherwise would have been entitled.

### II. *Acquiescence*

The question of acquiescence may be addressed briefly. Given that prejudice is also an element of this defense, and given the Court's conclusion that defendants have not made a sufficient showing of prejudice to entitle them to summary judgment on their laches defense, defendants' motion for summary judgment on the basis of this defense must also be denied.

The first element of acquiescence, that Citibank assured Citytrust that it would not assert its trademark rights against it, is also in dispute. Citytrust has presented no evidence of an express assurance of this sort by Citibank. The question, then, is whether the various business arrangements that Citibank has entered into with Citytrust amount to an implied assurance. The Court need not resolve this dispute at this time. However, it will note that this issue also presents factual issues that must be tried. *Compare e.g.,* Defendants' 3(g) Statement at ¶ 37 with Plaintiffs' 3(g) Statement at ¶ 41.

### Conclusion

For the reasons stated above, defendants' motion for summary judgment is denied.