Niel V. GRONDAHL, Appellant,

v.

MERRITT & HARRIS, INC., Elliott "Buzz" Harris, III, Charles J. Seidler, Jr. and Lane & Mittendorf, Appellees.

No. 1361, Docket 91–9304.

United States Court of Appeals, Second Circuit.

Argued April 14, 1992.

Decided May 22, 1992.

Peter G. Eikenberry, New York City (Michelle E. Phillips, and Seyfarth Shaw Fairweather & Geraldson, on the brief), for appellant.

Andrew P. Saulitis, New York City (J. Robert Lunney, and Lunney & Crocco, on the brief), for appellees.

Before: TIMBERS and PRATT, Circuit Judges, and MUKASEY, District Judge, of the Southern District of New York, sitting by designation.

TIMBERS, Circuit Judge:

Appellant Niel V. Grondahl appeals from a summary judgment entered November 22, 1991, in the Southern District of New York, Kevin Thomas Duffy, *District Judge*, dismissing Grondahl's action in which there were alleged violations of § 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, and pendent state law claims. The action was based upon a stock buy-sell agreement with his former employer, appellee Merritt & Harris, Inc. (Merritt), and Elliott "Buzz" Harris, III (the president and chairman of Merritt). Also named as defendants were Lane & Mittendorf (Merritt's legal counsel), and Charles J. Seidler, Jr. (Merritt's treasurer, and a partner in Lane & Mittendorf). The buy-sell agreement required Grondahl to offer for repurchase his interest in Merritt upon his termination from the company. Merritt subsequently terminated Grondahl. In accordance with the buy-sell agreement, Harris issued a check for the book value of Grondahl's shares. Contending that his stock was worth far more than that paid by Harris, Grondahl commenced this action alleging that appellees engaged in a stock fraud conspiracy to deny him the full value of his interest in Merritt. The court held that Grondahl failed to commence his action within the applicable statute of limitations period and dismissed the action on a motion for summary judgment.

For the reasons that follow, we affirm the judgment of the district court.

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues on appeal.

Merritt is a privately held construction consulting firm which employed Grondahl as an engineer from April 1972 until September 1987, when his status changed to that of a "consultant". From October 1981 to February 1988, Grondahl served as an officer of Merritt which is a New York corporation. Grondahl is a resident of New York state.

Grondahl claims that in 1980 Harris promised him a 25% partnership interest in Merritt once he obtained his professional engineer status. After obtaining this status, Harris personally sold Grondahl a 12.5% interest in Merritt for $2,400 under two buy-sell agreements. These agreements, which were executed in 1982 and 1983, required Grondahl to allow Harris to repurchase his interest in the event that Grondahl left the firm. Both agreements provided that the repurchase price of Grondahl's interest would be calculated as follows:

> "One Thousand Two Hundred Dollars ($1,200.00) if the corporation shall be a Subchapter "S" corporation. If the corporation shall have for any reason terminated such election, the purchase price shall be the book value of such stock at the end of the month following the date of such event. Such valuation shall be determined by the corporation's regularly employed accountants."

In February 1988, Merritt terminated Grondahl's employment. In accordance with the buy-sell agreement, Merritt's accountants, Davies & Davies, used the cash method of accounting (a method which Merritt has used for financial statement and tax return purposes since 1969) to determine the value of Grondahl's interest as $4,008. On April 4, 1988, Grondahl was informed of the computation by Davies & Davies in a letter from Seidler. On September 12, 1989, Lane & Mittendorf informed Grondahl that a check in amount of $4,008 had been tendered by Harris and that the law firm was holding these funds in escrow for him.

More than two years after he received the April 4, 1988 valuation letter, and almost eight years after the first buy-sell

agreement was executed, Grondahl commenced this action on April 20, 1990. He alleges that use of a more appropriate accounting method, the accrual method, would have resulted in a $300,000 book value of his interest. Grondahl asserts that the accrual method of accounting would be more appropriate because the cash method used by Davies & Davies ignores Merritt's largest asset, its accounts receivable. Grondahl alleges that in using the cash method appellees acted in a fraudulent manner to deny him his share of Merritt's true value. Finding that the alleged conspiracy to defraud Grondahl occurred "no later than 1982", i.e. on November 12, 1991, the court granted appellees' motion for summary judgment on the ground that Grondahl's federal securities law claims were time-barred. The court then dismissed the pendent state claims.

We turn directly to the issue of whether the court properly held Grondahl's claims to be time-barred.

## II.

The question of the appropriate statute of limitations period governing securities fraud claims has given rise to considerable controversy. We previously had held that "[i]n actions alleging fraudulent violations of the federal securities laws, which are brought in the district courts sitting in New York State, the New York statute of limitations for actions based on common law fraud customarily is applied." *Armstrong v. McAlpin*, 699 F.2d 79, 86 (2 Cir. 1983). Under the applicable New York statute of limitations, "federal plaintiff[s] ... must sue within six years from the time the cause of action accrued *or* within two years from the time the wrongdoing was, or with reasonable diligence should have been, discovered." *Id.* at 87 (emphasis added); *see Stull v. Bayard*, 561 F.2d 429, 432 (2 Cir.1977) (quoting *Hoff Research & Dev. Laboratories, Inc. v. Philippine Nat'l Bank*, 426 F.2d 1023, 1026 (2 Cir.1970)) (an action is timely filed so long as it is filed within either one of the " 'two separately-timed and alternative

limitations periods' "), *cert. denied*, 434 U.S. 1035 (1978).

We recently have rejected this practice of adopting the most analogous state limitations period for securities fraud claims, and instead have adopted a uniform one year/ three year federal limitations period for such claims. *Ceres Partners v. GEL Assoc.*, 918 F.2d 349 (2 Cir.1990). In adopting the new one year/three year rule in *Ceres*, we left open the question of whether that period should be applied retroactively to other actions already commenced as of the date of the *Ceres* decision. Subsequently, we held that the new limitations period set forth in *Ceres* should not be applied retroactively where such application would conflict with the purposes of the rule or produce inequitable results. *Welch v. Cadre Capital*, 923 F.2d 989, 992–95 (2 Cir.) (applying criteria set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971)), *vacated and remanded sub nom. Northwest Savings Bank v. Welch*, 111 S.Ct. 2882 (1991).

On June 20, 1991, the Supreme Court held that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after discovery of the facts constituting the violation and within three years of such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 111 S.Ct. 2773, 2782 (1991). At the direction of the Supreme Court, we reconsidered our *Welch* decision in light of the Court's decision in *Lampf* (and in *James B. Beam Distilling Co. v. Georgia*, 111 S.Ct. 2439 (1991)) and held that "the retroactive ruling in *Lampf* is to be applied retroactively to all cases not finally adjudicated on the date when *Lampf* was decided." *Welch, supra*, 946 F.2d at 188.

On December 19, 1991, Congress proscribed *pro forma* retroactive application of the *Lampf* rule by amending the Securities Exchange Act of 1934. Federal Deposit Insurance Corporation Improvement Act of 1991, § 476, Pub.L. 102–242, 1991 U.S.C.C.A.N. (105 Stat.) 2236, codified as

§ 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa–1 (Supp.III 1991). Under § 27A, Congress required that "[t]he limitation period for any private civil action implied under section 10(b) of [the '34 Act] that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991 ...," the day before *Lampf* was decided. *Cf. Alex Johnson, Inc. v. Arthur Anderson & Co.,* 790 F.Supp. 476 (S.D.N.Y. 1992) (rejecting claim that § 27A is an unconstitutional violation of the separation of powers doctrine). *But see In re Brichard Securities Litigation,* 788 F.Supp. 1098 (N.D.Cal.1992) (holding § 27A is an unconstitutional violation of the separation of powers doctrine).

Furthermore, in order to benefit from the application of § 27A, Grondahl was required to file for reinstatement of his action no later than 60 days after December 19, 1991, the effective date of § 27A. 15 U.S.C. § 78aa–1(b) (Supp.III 1991). Here, the record does not indicate clearly whether Grondahl moved for reinstatement within the 60–day period following December 19, 1991. Nevertheless, since we hold that Grondahl's claim is time-barred under the pre-*Lampf* filing period—a more generous filing period—we need not determine whether in fact Grondahl satisfied the 60–day filing requirement of § 27A.

Under this Congressional requirement, since Grondahl commenced his action on April 20, 1990, he potentially was entitled to have his securities fraud claims governed by the statute of limitations period in effect prior to the Supreme Court's decision in *Lampf.* The limitations period governing Grondahl's claims therefore arguably is the one year/three year period adopted by us in *Ceres,* unless retroactive application of that period would conflict with the purposes of the rule or produce inequitable results, *Henley v. Stone,* 961 F.2d 23, 26 (2 Cir.1992); *Welch, supra,* 923 F.2d at 993; *Chevron, supra,* 404 U.S. at 106–07, in which case Grondahl's action

would be governed by the most analogous New York limitations period.

### III.

Having considered the confused state of the law in this area, we turn to Grondahl's individual claims against Merritt. We hold that Grondahl's action was not timely filed under either the one year/three year rule in *Ceres* or the more generous two year/six year New York rule. Accordingly, we do not reach the issue of whether the one year/three year limitations period adopted in *Ceres* should be retroactively applied to this action.

The district court held that the statute of limitations began to run "some time no later than 1982," eight years before Grondahl commenced this action. As for the discovery component of the statute of limitations period (the alternative two year period following discovery), Grondahl concedes that he was informed of the "undervalued repurchase price ... by a letter dated April 4, 1988." He failed, however, to commence this action within two years after receiving the April 4 letter. Since Grondahl waited more than six years from the date the buy-sell agreements were executed and more than two years after he was placed on notice, he failed to satisfy the requirement that the action be commenced within either of the arguably applicable statute of limitations periods.

Grondahl concedes that all of his federal claims are barred by *Lampf,* except one in which he seeks relief for the "September 1989 force[d] sale" of his interest in Merritt. As to this remaining claim, he contends that the statute of limitations did not begin to run until September 12, 1989, the date of the letter informing him that his interest had been transferred to Harris. In asserting this contention, Grondahl relies on a case, in the antitrust context, where the Court held that a claim accrues after damages are suffered. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 339 (1971) (holding that "the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered"). Based upon this reasoning,

Grondahl asserts that he did not suffer damages until the date of the forced sale. We disagree.

Grondahl concedes in his complaint that he received the April 4, 1988 letter informing him of the value which Davies & Davies placed on his interest in Merritt. Since this was more than two years before he commenced this action, "the alternative six-year period is the only limitation period with which this Court is concerned." *Levinger v. Shepard Niles Crane & Hoist Corp.*, 616 F.Supp. 21, 23 (W.D.N.Y.1985). It previously has been held that "a claim accrues not when the plaintiff first knew or had reason to know of the alleged violation, but when he first becomes 'entitled to vindicate his individual rights.' " *Local 144 v. C.N.H. Management Assoc.*, 752 F.Supp. 1195, 1206 (S.D.N.Y.1990) (quoting *Barninger v. National Maritime Union*, 372 F.Supp. 908, 913 (S.D.N.Y.1974)); *see also Hollander v. Brezenoff*, 582 F.Supp. 1516, 1518 (S.D.N.Y.1984), *aff'd*, 787 F.2d 834 (2 Cir.1986). We hold that Grondahl's claim accrued upon the execution of the buy-sell agreements.

The statute of limitations in federal securities law cases starts to run on the date that the parties have *committed* themselves to complete the purchase or sale transaction. *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2 Cir.1972) ("[T]he time of a 'purchase or sale' of securities within the meaning of Rule 10b–5 is to be determined as the time when the parties to the transaction are *committed* to one another.") (emphasis added); *see also Hill v. Equitable Bank, Nat. Ass'n*, 599 F.Supp. 1062, 1072 (D.Del.1984) (A cause of action under 10b–5 starts to run "on the date that the purchase or sale of securities in question occurred."). In *Radiation Dynamics, supra*, 464 F.2d at 891, we held that

> " '[c]ommitment' is a simple and direct way of designating the point at which, in the classical contractual sense, there was a meeting of the minds of the parties; it

marks the point at which the parties obligated themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time."

*Id.* (emphasis added); *see also Helman v. Murry's Steaks, Inc.*, 742 F.Supp. 860, 869–70 (D.Del.1990). In the instant case, the parties entered into binding buy-sell agreements in 1982 and 1983. The court properly concluded that the fraud was committed no later than 1982, and that the September 1989 letter did not extend the filing period. Rather, the September 1989 letter merely signaled the end of the transaction that the parties previously had committed themselves to complete.

Grondahl also complains that the court erred in dismissing his remaining pendent state law claims. The Supreme Court stated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *See also Nolan v. Meyer*, 520 F.2d 1276, 1280 (2 Cir.) ("[R]etention of jurisdiction for trial of a pendent state law claim on the basis of a federal question claim already disposed of by a Rule 12(b)(6) motion, would be an abuse of discretion absent unusual circumstances ... suggesting some prejudice arising from relegating the case for trial in the state court."), *cert. denied*, 423 U.S. 1034 (1975). The court's dismissal of Grondahl's pendent claims was proper.

## IV.

To summarize:

Grondahl failed to commence his action within any of the arguably applicable statute of limitations periods. Since he failed to satisfy the terms of the more generous pre-*Lampf* filing period, we do not reach the issue of whether the court erred in retroactively applying the more stringent post-*Lampf* filing requirement. The court properly dismissed Grondahl's federal securities action. Furthermore, since the underlying federal claims were dismissed on

summary judgment, the court did not err in dismissing Grondahl's pendent law claims.

Affirmed.