**In re Ivan F. BOESKY SECURITIES LITIGATION.**

Jack A. MEYERSON, Pamela S. Meyerson, George Froley as Trustee, Edith Citron, William Weinberger, Samuel Schaeffler, et al., Plaintiffs,

v.

WICKES COMPANIES, INC. and Sanford C. Sigoloff, Defendants.

MDL Dkt. No. 732.
No. M 21–45–MP.

United States District Court, S.D. New York.

April 7, 1995.

Wolf Popper Ross Wolf & Jones, L.L.P. (Stanley Nemser, of counsel), New York City, Berger & Montague, P.C. (David Berger, of counsel), Philadelphia, PA, for plaintiffs Class V Subclass 3.

Milberg Weiss Bershad Hynes & Lerach (Patrick Coughlin, of counsel), San Diego, CA, for plaintiffs Citron and Weinberger in Class V Subclass 3.

Shearman & Sterling (Stuart Baskin, of counsel), New York City, for defendant Wickes Companies, Inc.

Costigan & Berns, P.C. (Mitchell Berns, of counsel), New York City, for defendant Sigoloff.

Bader and Bader (I. Walton Bader, of counsel), White Plains, NY, for plaintiff Schaeffler.

### OPINION

MILTON POLLACK, Senior District Judge:

The plaintiffs Jack Meyerson, Pamela Meyerson, George Froley as trustee, Edith Citron, William Weinberger, and Samuel Schaeffler, members of and representing Class V, Subclass 3 in MDL 732, have moved for an order pursuant to Fed.R.Civ.P. 15(a) granting them leave to amend the Fifth Consolidated Amended Complaint ("the Fifth Complaint") to clarify that defendants Wickes Companies, Inc. ("Wickes") and former Wickes director Sanford Sigoloff ("Sigoloff") are among the defendants against whom the Fifth Complaint asserts claims based on § 10(b) of the Exchange Act and civil RICO. The plaintiffs also ask the Court to deem the proposed amendment to be incorporated into the Fifth Complaint. Both Wickes and Sigoloff deny that the Fifth Complaint as it stands includes Exchange Act or RICO claims against them and object to a proposed addition of their names by amendment of the Fifth Complaint.

The motion will be granted for the reasons set forth below.

### Background

Starting in 1986, numerous civil actions arising out of a conspiracy among Ivan Boesky, Michael Milken, and others to violate the federal securities laws were filed in the Southern District of New York. On August 5, 1987, the Judicial Panel on Multidistrict Litigation entered an order pursuant to 28 U.S.C. § 1407 centralizing in the Southern District of New York for coordinated or consolidated pretrial proceedings three actions pending in other districts with nine actions already pending before the undersigned. On October 29, 1987, this Court directed the plaintiffs to file a Consolidated Amended Complaint, which would consolidate the actions centralized by the Multidistrict Panel until then and supersede the complaints in those actions. The First Consolidated Amended Complaint was filed on November 2, 1987. A Second Consolidated Amended Complaint was filed on February 29, 1988. A Third Consolidated Amended Complaint was filed on June 24, 1988. No claims against Wickes or Sigoloff had yet been made part of the proceedings in MDL 732. The claims asserted by the plaintiffs in the instant motion arise out of the forced conversion during the period April 23, 1986 through June 2, 1986 of all shares of $2.50 Convert-

ible Exchangeable Preferred issued by Wickes Companies, Inc., ("Wickes Preferred"). Allegedly this was accomplished by inflating the price of Wickes common stock in order to trigger Wickes' right to force the conversion of Wickes Preferred, thereby eliminating the company's obligation to pay annual cumulative dividends to its preferred stockholders.

On December 2, 1988, Edith Citron, a holder of Wickes Preferred who was forced to convert her shares, commenced a class action in Los Angeles Superior Court in which Wickes was named as a defendant ("*Citron*"). Citron's complaint was amended on January 9, 1990, to add Sigoloff as a defendant. *Citron* alleged that Wickes and Sigoloff conspired with Michael Milken and Drexel Burnham Lambert, Inc. to violate California securities statutes, common law, and the federal Securities Act of 1933. On December 9, 1988, William Weinberger filed a substantially similar class action in Los Angeles Superior Court in which Wickes was named as a defendant ("*Weinberger*"). Sigoloff was added as a defendant in *Weinberger* by amendment on January 9, 1990.

On August 10, 1989, this Court directed plaintiffs to file a Fourth Consolidated Amended Complaint that would include causes of action asserted in several actions filed in this Court during 1989 or transferred here from other districts. The Fourth Consolidated Amended Complaint ("the Fourth Complaint") was filed on November 20, 1989. Jack Meyerson, Pamela Meyerson, and George Froley as trustee, former holders of Wickes Preferred, were joined in MDL 732 as plaintiffs and asserted in the Fourth Complaint their claims against Wickes, Sigoloff, Milken, Drexel, Boesky, and other defendants on behalf of a purported class, Subclass 3 of Class V, consisting of Wickes Preferred holders who redeemed, converted, or sold their shares during the period April 23, 1986 through June 2, 1986. As did Citron

and Weinberger, the Meyersons and Froley charged that Wickes and Sigoloff were part of a conspiracy to inflate the price of Wickes common to force the conversion of Wickes Preferred. After service and filing of the Fourth Complaint, Citron and Weinberger also joined MDL 732 as plaintiffs pursuant to an order dated February 15, 1990, with the understanding that they would "pursue in the above-captioned consolidated actions all of their individual and class claims arising out of *the conduct* alleged by them in the aforesaid California actions." MDL 732 Order No. 55 (emphasis added). Wickes and Sigoloff *stipulated* to entry of this order. Meanwhile, the California state court cases, *Citron* and *Weinberger*, were stayed by consent of the parties on March 7, 1990, and remain pending in California.

On December 20, 1989, the Meyersons and Froley, among other plaintiffs, moved for certification of various classes, including Subclass 3 of Class V as defined in the Fourth Complaint. On February 21, 1990, the proposed class was certified herein for all purposes pursuant to Order No. 56, a stipulated order to which both Wickes and Sigoloff consented. Order No. 56 designated the plaintiffs Meyersons, Froley, Citron, and Weinberger as the representatives of Subclass 3.[1]

A Fifth Consolidated Amended Complaint was then filed on August 2, 1991. It showed that Citron and Weinberger were together with the other plaintiffs herein asserting claims against Wickes and Sigoloff on behalf of Subclass 3 of Class V ("the plaintiffs"), viz.: the same conspiracy to inflate the price of Wickes common alleged in the Fourth Complaint. It is undisputed that Wickes and Sigoloff are named as defendants in three of the counts in the Fifth Complaint: Counts 32 (common law fraud and deceit), 33 (breach of fiduciary duty and unjust enrichment), and 34 (violation of California Corporations Code § 25400).

---

**1.** Order No. 56 was amended on September 7, 1993 by Order No. 133, which added Samuel Schaeffler as a plaintiff in MDL 732 and as a representative of Class V Subclass 3. Wickes and Sigoloff consented to entry of this order. Schaeffler had been forced to convert his holdings of Wickes Preferred and had been litigating

in California state court. By the terms of Order No. 133, Schaeffler was included in MDL 732 to assert the Wickes Class claims set forth in the Fifth Consolidated Amended Complaint with the understanding that his California action would be dismissed without prejudice.

The dispute that has culminated in the instant motion concerns whether Counts 26 and 28 of the Fifth Complaint, which assert federal claims on behalf of Subclass 3 of Class V pursuant to § 10(b) and Rule 10b–5 of the 1934 Exchange Act (Count 26) and the civil RICO statute (Count 28), also charge Wickes and Sigoloff with those federal violations. The caption of Count 26 illustrates the basis of the dispute:[2]

### Count XXVI

*On Behalf of Class V Plaintiffs (and Teachers as to Wickes)[3] Against Class V Defendants (and Monzert as to Wickes)*

*Section 10(b) and Rule 10b–5*

Paragraph 134 of the Fifth Complaint defines the term "Class V Defendants" as Boesky, the Boesky-controlled entities, Drexel, Milken, Lowell Milken and Maultasch. The term does *not* include defendants Monzert, Wickes, or the Wickes Board [*i.e.*, Sigoloff], whom ¶ 134 separately designates as the "Wickes Defendants." Footnote 4 to ¶ 801 modifies ¶ 134's definition of "Class V Defendants" to include Monzert but does not expressly mention defendants Wickes or Sigoloff. Footnote 4 reads:

> For the purpose of Counts XXVI, XXVIII, XXX and XXXI, the term "Class V Defendants" shall be deemed to also refer to defendant Monzert with regard to the Wickes transaction.

The plaintiffs seek leave to amend footnote 4 of ¶ 801 in order to add Wickes and Sigoloff to the definition of the term "Class V Defendant" for purposes of Counts 26 and 28, as well as charging them with two pendant state-law counts, Counts 30 and 31, of common law fraud and unjust enrichment against the Class V Defendants. The proposed amendment would change footnote 4 to read as follows:

> For the purpose of Counts XXVI, XXVIII, XXX and XXXI and the headings thereof, the term "Class V Defendants" shall be deemed to also refer to the Wickes Defendants, as defined in ¶ 134 of this Fifth Complaint, with regard to the Wickes transaction.

The plaintiffs characterize their motion as one to clarify that Wickes and Sigoloff are already named defendants in Counts 26 and 28 of the Fifth Complaint. Wickes and Sigoloff disagree, insisting that the plaintiffs deliberately drafted the Fifth Complaint to avoid stating any federal claims against them asserted in those Counts. Moreover, adding these names expressly by amendment would be improper, they contend, because the proposed amendment would be futile, would cause prejudice, and is being offered in bad faith.[4]

### Discussion

**I. Counts 26 and 28 already express the federal claims against Wickes and Sigoloff.**

■ Counts 26 and 28 of the Fifth Complaint already contain allegations sufficient to express claims arising under § 10(b) and civil RICO against Wickes and Sigoloff. Under Rule 8(a), Fed.R.Civ.P., in order to plead a claim for relief, a complaint need only contain

> (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

The Fifth Complaint already implicitly satisfies all three of these requirements as to the § 10(b) and civil RICO claims against Wickes and Sigoloff. The Fifth Complaint properly names the statutes that confer jurisdiction on this Court to hear § 10(b) and civil RICO

---

**2.** Aside from its numbering and its reference to RICO, the caption of Count 28 is identical to the caption of Count 26.

**3.** This Court ultimately dismissed the claims of Teachers Retirement System of Louisiana from MDL 732 with prejudice on September 7, 1993, because Teachers had not been a holder of Wickes Preferred.

**4.** Sigoloff joins in Wickes' arguments, and to the extent that Sigoloff merely adopts Wickes' arguments without adapting them to his own unique circumstances, this opinion will simply refer to these arguments as Wickes'. Sigoloff separately contends that the plaintiffs lack evidence linking him to the alleged RICO conspiracy.

claims.[5] Counts 26 and 28 of the Fifth Complaint incorporate by reference factual allegations under which the plaintiffs would be entitled to relief against the defendants pursuant to § 10(b) and civil RICO.[6] That the Fifth Complaint does not identify § 10(b) or civil RICO as legal theories under which relief is demanded from Wickes and Sigoloff is immaterial. The Second Circuit does not restrict a complaint to the legal theories specifically identified if the allegations therein would support other theories of relief as well. "The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2nd Cir.1988) (en banc) (holding that complaint asserted claim under 42 U.S.C. § 1981 even though the complaint expressly claimed relief under the Fourteenth Amendment and did not also cite § 1981); *see also Johnson v. Jackson*, 82 F.Supp. 915, 918 (E.D.Pa.1949) ("If the pleading states a cause of action for relief, the designation of the cause and the prayer for relief, although some indication of the nature of the cause, are not controlling and the appropriate relief under the facts pleaded, will be granted."). Finally, the Fifth Complaint demands relief particular to civil RICO—treble damages and attorneys' fees—as well as compensatory damages and any other appropriate relief.

However, Wickes maintains that, absent an amendment to the Fifth Complaint, this Court may not grant plaintiffs relief against those defendants on a § 10(b) or civil RICO theory, because the plaintiffs elected not to rely on federal causes of action. Invoking the well-pleaded complaint rule, Wickes con-cludes that, because the plaintiffs decided not to expressly assert federal causes of action against those defendants in the Fifth Complaint by citation of the federal statutes, no federal question as to Wickes or Sigoloff appears on the face of the Fifth Complaint. Consequently, Wickes and Sigoloff contend that the Court has not obtained federal question jurisdiction over them regardless of the factual allegations made.

Under the well-pleaded complaint rule, a plaintiff may indeed elect to rely solely on state law and thereby avoid federal question jurisdiction, even if the complaint alleges facts on which federal causes of action could be predicated. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.") (citations omitted); *Alameda Room, Inc. v. Pitta*, 538 F.Supp. 1072, 1075 (S.D.N.Y.1982) ("where the facts of a case support both a federal and a state law claim, the 'face-of-the-complaint rule' provides that 'the party who brings [the] suit is master to decide what law he will rely upon,' *The Fair v. Kohler Die & Specialty Company*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), meaning that the plaintiff in such a case can confine its complaint to a state law theory and proceed in state court without fear of removal to federal court").

---

5. Paragraph 2 of the Fifth Complaint alleges that "[t]he jurisdiction of this Court is based on Section 27 of the Securities Exchange Act of 1934, as amended ("1934 Act"), 15 U.S.C. § 78aa; Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c); and principles of pendent jurisdiction."

6. Both of these Counts incorporate by reference ¶ 59, which names Wickes as one of the defendants in the Fifth Complaint, and ¶ 60, which alleges that Sigoloff was a controlling person of Wickes. Both counts also incorporate ¶ 319, which alleges that *"defendants Wickes and the Wickes Board* intentionally released a contrived series of materially false and misleading public statements regarding Wickes, its businesses, financial performance and condition, and expansion and diversification" (emphasis added), and ¶ 330, which alleges that "[d]uring the afternoon of April 23, 1986, Drexel, at the direction of defendant Milken and, in furtherance of the conspiracy to manipulate the price of Wickes common stock entered into between and among *Wickes*, Drexel, *Sigoloff* and Milken, caused the market for Wickes common stock to be artificially inflated and manipulated...." (emphasis added).

However, when a complaint on its face does not unambiguously indicate whether the plaintiff is relying solely on state law, the court may consider the conduct of the plaintiff in order to determine on what laws the plaintiff has chosen to rely. *See 15 McKay Place v. AFL–CIO, Service Employees International Union,* 576 F.Supp. 1423, 1426 (E.D.N.Y.1983) ("A federal court may, however, attempt to ascertain whether a plaintiff's claim is state or federal in nature if this is not obvious from the face of the complaint.... When, as here, the complaint is ambiguous as to the federal or state nature of the claim, a plaintiff may restrict himself to a state cause of action in a timely motion to remand.") (citing *Vitarroz v. Borden, Inc.,* 644 F.2d 960 (2nd Cir.1981)). In *Vitarroz,* the Second Circuit considered *sua sponte* whether a complaint filed in state court that alleged trademark infringement had been properly removed, given that the facts alleged described a violation of both state and federal trademark law and that "[t]he complaint did not specify whether these claims were based on state or federal law." *Id.* at 962. Recognizing that "a plaintiff alleging facts that would support a claim founded upon either federal or state law is free to confine his claim to one based on state law and proceed in state court," *id.* at 964, the Second Circuit nevertheless held that the plaintiff had not so confined itself, because the plaintiff's conduct did not manifest an intention to rely only on state law:

> Had the plaintiff resisted removal in this case by a prompt motion to remand, we think federal jurisdiction would have been defeated. In that event, the pleader's preference to confine its claim to one based on state law would have been manifest, and a remand to the state court would have been required. However, by not contesting jurisdiction at an early stage, we think the plaintiff permitted the District Court to exercise jurisdiction, since the Court was entitled to conclude that the plaintiff was willing to see its trademark infringement claim treated as one based on federal law.

*Id.*

The Fifth Complaint does not unambiguously indicate on its face whether the plaintiffs are relying solely on state law as the basis for relief against Wickes and Sigoloff. The fact that neither Wickes or Sigoloff are named as defendants in the captions to Counts 26 or 28 suggests that the plaintiffs might have elected to assert only state law claims against these defendants. However, the Fifth Complaint contains no language expressly abandoning federal causes of action against those defendants. Moreover, the fact that the Fifth Complaint alleges federal question jurisdiction and that Counts 26 and 28 incorporate by reference allegations that Wickes and Sigoloff participated in a federal conspiracy and made material misrepresentations all suggest that the plaintiffs were not relying exclusively on state law. Also, the Fifth Complaint was originally filed in federal court; filing in a federal forum is inconsistent with an intention to avoid asserting federal causes of action where, as here, Counts 26 and 28 allege no basis for subject matter jurisdiction aside from federal question jurisdiction.

As in *Vitarroz,* the conduct of the plaintiffs reveals that they were not relying solely on state law. The plaintiffs affirmatively chose to appear in federal court. Plaintiffs Jack Meyerson, Pamela Meyerson, and Froley asserted their claims against Wickes and Sigoloff when they joined what was to become Class V Subclass 3 in the Fourth Complaint. Plaintiffs Citron and Weinberger voluntarily joined the Meyersons and Froley in the Fifth Complaint as plaintiffs pursuant to a stipulation to which Wickes and Sigoloff consented and that contemplated that they would pursue in this forum *all* of their claims arising out of the transactions alleged in *Citron* and *Weinberger.* Moreover, by bringing on the instant clarifying motion, the plaintiffs leave no doubt that they desire this Court to decide whether they are entitled to relief under § 10(b) and civil RICO against Wickes and Sigoloff.

Wickes interprets the history of the plaintiffs' involvement in MDL 732 differently. It contends that the plaintiffs purposefully designed the Fourth and Fifth Complaints to avoid this Court's subject matter jurisdiction by relying solely on state law, the object

being to participate in discovery proceedings in MDL 732 without risking trial in this or any other federal forum. The three facts from which Wickes infers an intention of the parties-plaintiff not to rely on federal liability are that (1) neither *Citron* or *Weinberger* originally alleged in California any federal cause of action against Wickes; (2) both of these state court class actions were amended to allege supposedly time-barred claims under §§ 11 and 12(2) of the Securities Act of 1933; and (3) the California Supreme Court rendered a decision on September 9, 1993, *Mirkin v. Wasserman*, 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993), which held that the element of reliance necessary to plead common law fraud could not be satisfied by alleging reliance on the integrity of an efficient market. From the first two facts, Wickes concludes that plaintiffs Citron and Weinberger were attempting to exempt themselves from the removal jurisdiction of the federal courts; supposedly, the addition of claims under the 1933 Act rendered these actions incapable of being removed to federal court. From the third fact, Wickes concludes that the plaintiffs have only abandoned their original election of state law because California law is no longer favorable to their claims.

Wickes' interpretation of these facts is unconvincing for several reasons. Most importantly, the plaintiffs named in the title above did not limit themselves in this forum to pursuing discovery. The plaintiffs moved for federal certification of Subclass 3 of Class V, and this motion was granted on consent of all of the parties, including Wickes and Sigoloff, by Order dated February 21, 1990. This was not a discovery order or needed for that purpose. The plaintiffs' decision to seek federal class certification is inconsistent with an intention to confine themselves to pursuing discovery in this forum; rather, it is evidence of an intent to obtain a final resolution in this forum, whether by settlement or by trial, of all claims of the class members. In addition, the inferences that Wickes draws from the pleading of the California class actions make no sense. The addition of supposedly time-barred '33 Act claims to the California class actions did not make the California class actions unremovable as a whole. The case that Wickes cites to argue that it did, *Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir.1988), in fact shows no such thing.[7] Finally, Wickes' speculation that the California Supreme Court's decision in *Mirkin v. Wasserman* impelled the plaintiffs to seek to invest this Court with subject matter jurisdiction over Wickes ignores the fact that since at least May 26, 1992, the plaintiffs have maintained that the Fifth Complaint asserts federal causes of action against the defendants.[8] Because *Mirkin* was decided on September 9, 1993, it is implausible that

---

7. *Emrich* involved the legality of the removal of a complaint, Count I of which alleged violations of the '33 Act and California Corporation Code § 25401. Although the Court of Appeals held that the '33 Act claim in Count I was not removable, the court also held that the state law portion of Count I, as well as other state claims pleaded in the complaint, could be removed because of the presence of a civil RICO claim in the complaint. *See id.* at 1196. Thus, the addition of '33 Act claims to the California class actions would not pose any obstacle to removal of the state law claims in those cases, if some other basis of federal jurisdiction otherwise existed.

8. To demonstrate that they have long maintained that the complaints in MDL 732 assert federal claims against Wickes and Sigoloff, the plaintiffs have submitted a copy of a letter dated May 26, 1992, addressed to the defendants' counsel that demands settlement of MDL 732 on the grounds that "[l]iability of Wickes and Sigoloff for violation of § 10(b) in connection with the manipulation of the price of Wickes common stock ...

has become absolutely clear." *See* Declaration of Helen J. Hodges in Support of Plaintiffs' Reply on the Motion to Clarify or Amend the Fifth Consolidated Amended Complaint, Ex. 1 at 1.

Even Wickes' papers suggest that prior to 1993 the plaintiffs told the defendants that they are asserting federal claims in MDL 732. Stuart Baskin, one of Wickes' attorneys, states at ¶ 2 of his affidavit that

[o]n October 13, 1992, my partner James Tallon and I met with plaintiffs' counsel, William Lerach, Helen Hodges, Edward Gergosian and Jon Sigerman, in Los Angeles. At that meeting, I informed plaintiffs' counsel that the Fifth Consolidated Amended Complaint did not assert any federal claims against Wickes and did not otherwise confer subject matter jurisdiction over Wickes.

Unless Mr. Baskin's statement at this meeting was a non sequitur, at least as early as October 13, 1992, the plaintiffs were telling him that the Fifth Complaint asserted federal claims against Wickes.

*Mirkin* caused plaintiffs to change their position as to whether the Fifth Complaint alleged federal claims against Wickes.

Based on the facts discussed above, the Court finds that the plaintiffs have never decided to forego their federal claims against Wickes and Sigoloff and have repeatedly manifested their intent to rely on federal as well as state causes of action. Consequently, this Court has subject matter jurisdiction to determine the § 10(b) and civil RICO claims already asserted against Wickes and Sigoloff in Counts 26 and 28 of the Fifth Complaint.

## II. The Fifth Complaint can be clarified to express that it already asserts § 10(b) and civil RICO claims against Wickes and Sigoloff.

■ Leave to amend may properly be granted to allow the plaintiffs to remove the ambiguity in the Fifth Complaint as to the claims asserted against Wickes and Sigoloff. Rule 15(a), Fed.R.Civ.P., states that leave to amend "shall be freely given when justice so requires." Three general types of showing will support denial of leave to amend under Rule 15(a):

> As the Supreme Court concluded in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), a party "ought to be afforded an opportunity to test his claim on the merits," except in those instances where (1) the party's motion to amend is impelled by "bad faith or dilatory motive," *id.;* (2) the party's adversary can demonstrate that he will suffer actual prejudice if the motion to amend its granted, *see,* e.g., *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380 (2d Cir.1968); or (3) the proposed amendment would constitute no more than a futile exercise, *see,* e.g. *Friedman v. Chesapeake & O.R. Co.,* 261 F.Supp. 728 (S.D.N.Y.1966), *aff'd,* 395 F.2d 663 (2d Cir. 1968), *cert. denied,* 393 U.S. 1016 [89 S.Ct. 619, 21 L.Ed.2d 561]....

*Posadas de Mexico, S.A. de C.V. v. Dukes,* 757 F.Supp. 297, 300 (S.D.N.Y.1991).

Wickes' principal objection to the proposed amendment is that the three-year statute of repose made applicable to private actions under § 10(b) by *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), bars the plaintiffs' § 10(b) claim against both Wickes and Sigoloff, so that the proposed amendment would constitute a futile exercise. In addition, Wickes contends that the inadequate pleading of the civil RICO claim also would mandate dismissal of Count 28. Finally, should these obstacles to amendment be overcome, Wickes urges the Court to exercise its discretion to deny leave to amend on grounds of undue prejudice and bad faith. None of these objections have merit.

### A. Wickes and Sigoloff have not demonstrated that *Lampf* renders the proposed amendment futile.

■ Leave to amend is properly denied on grounds of futility only if "a proposed amendment is clearly frivolous or legally insufficient on its face." *Leriman v. Chuckleberry Publications, Inc.,* 521 F.Supp. 228, 231 (S.D.N.Y.1981). Otherwise, "the substantive merits of a claim or defense should not be considered on a motion to amend." *Id.*

Relying on the Supreme Court's decision in *Lampf* that a three-year statute of repose applies to private § 10(b) actions, Wickes argues that, as a matter of law, the Fifth Complaint cannot state a timely § 10(b) claim against Wickes or Sigoloff. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364 & n. 9, 111 S.Ct. 2773, 2782 & n. 9, 115 L.Ed.2d 321 (1991) (holding that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation" and that 15 U.S.C. § 78i(e) provides the exact limitations rule). Fundamental to Wickes' argument is its calculation that any § 10(b) claim arising out of Wickes' alleged participation in the conspiracy to manipulate the price of Wickes common stock must have been brought by June 2, 1989.[9]

---

9. Wickes assumes that, because certified Subclass 3 of Class V includes those investors who

redeemed, converted, or sold Wickes Preferred during the period April 23, 1986 through June 2,

They contend that because the Fourth Complaint was filed after this date, even if the federal claims asserted against Wickes and Sigoloff in the Fifth Complaint related back to the Fourth Complaint (or even if the Fourth Complaint already asserted these claims), *Lampf* would bar them. Moreover, Wickes interprets *Lampf* as preventing otherwise untimely claims in a proposed amendment from relating back to a timely original pleading.

The plaintiffs respond that *Lampf* does not apply to the Fourth Complaint, because pursuant to § 27A of the Securities and Exchange Act of 1934, codified at 15 U.S.C. § 78aa–1 (1991), *Lampf* does not apply retroactively. Since *Lampf* was decided on June 20, 1991, the plaintiffs conclude that *Lampf* does not govern the timeliness of § 10(b) claims in the Fourth Complaint; if the proposed amendment relates back to the Fourth Complaint, as the plaintiffs contend it does, the federal claims would be timely. However, during oral argument, Wickes' counsel maintained that the plaintiffs could not take advantage of § 27A unless they made a motion to reinstate their § 10(b) claims no later than December 19, 1991.

**1. *Lampf* does not prevent the proposed amendment from relating back to the Fourth Complaint.**

Fed.R.Civ.P. 15(c)(2) provides that

An Amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth

or attempted to be set forth in the original pleading.

The § 10(b) clarification that the proposed amendment would make against Wickes and Sigoloff clearly arises out of the same transaction set forth in the Fourth Complaint. The Fourth Complaint alleges that Wickes and Sigoloff participated in the alleged conspiracy and made material misrepresentations.[10] Thus, the requirements of Rule 15(c)(2) are satisfied.

However, Wickes argues that *Lampf* prevents the proposed amendment from relating back to the Fourth Complaint. Wickes arrives at this result by two independent lines of reasoning. First, Wickes argues that, because Rule 15(c)(2) is a tolling doctrine and because the *Lampf* Court held that tolling doctrines do not apply to the three-year repose period applicable to § 10(b) claims,[11] Rule 15(c) cannot allow assertion of a § 10(b) claim after the repose period has run. Second, Wickes construes *Lampf* as holding that a § 10(b) claim is substantively extinguished three years after the occurrence of the violation forming the basis for the claim. Under this construction, Wickes contends that to allow relation back under Rule 15(c) would effectively create a new liability rather than remove a procedural bar to the assertion of an existing liability. Under *Resolution Trust Corp. v. Olson*, 768 F.Supp. 283 (D.Ariz.1991), Rule 15(c) cannot create new liabilities:

Relation back under Rule 15 does not apply when the statute at issue defines substantive rights rather than merely limiting

---

1986, the last day on which a class member might have transacted with Wickes is June 2, 1986. Wickes further assumes that the date of sale determines the date of the § 10(b) violation. Because this Court concludes that *Lampf* is inapplicable to this motion, the date on which the *Lampf* limitations period began to run need not be determined.

**10.** Paragraph 786 of the Fourth Complaint, which is part of the common law fraud count asserted against Wickes and Sigoloff, alleges that "Wickes and the Wickes Board knowingly and recklessly participated with the Class V Defendants in a scheme and conspiracy to defraud as part of which they engaged in market manipulation of Wickes common stock and made participated in the making of misrepresentations

of fact as set forth herein." Moreover, as in the Fifth Complaint, the Fourth Complaint's § 10(b) and civil RICO allegations incorporate by reference earlier allegations naming Wickes and Sigoloff as defendants.

Indeed, the Fourth Complaint itself contains sufficient factual and jurisdictional allegations on behalf of Class V Subclass 3 plaintiffs to assert their claims for relief under § 10(b) and civil RICO against Wickes and Sigoloff.

**11.** *See Lampf*, 501 U.S. at 363, 111 S.Ct. at 2782 ("The 3–year limit is a period of repose inconsistent with tolling.... Because the purposes of the 3–year limitation is clearly to serve as a cutoff, ... tolling principles do not apply to that period.").

procedural remedies. A statute of limitations is procedural in nature while a statute of repose is substantive in that it defines a right rather than merely limits its enforcement.

*Id.* at 285. Both lines of argument are legally unsound.

■ First, Rule 15(c) is not a tolling doctrine. "Tolling doctrines stop the statute of limitations from running even if the accrual date has passed." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). However, the effect of Rule 15(c) is not to suspend the running of a statute of limitations; instead, it allows a litigant to sue upon a claim on which the statute of limitations has already run out and that would be barred were it to be brought in a separate action. *See Rumberg v. Weber Aircraft Corporation,* 424 F.Supp. 294, 301 (C.D.Cal.1976) ("Rule 15(c) is designed to provide a uniform solution to statute of limitations problems when amendments are sought after the limitations period has expired; it was not designed to determine the length of the limitations period to be applied."). Therefore, *Lampf's* holding that tolling principles do not apply to the three-year statute of repose applicable to § 10(b) claims does not mean that Rule 15(c) cannot allow a § 10(b) claim to be added by amendment to a timely-filed complaint, even though the amendment is proposed after June 19, 1991 and more than three years after the § 10(b) violation.[12]

■ Second, Wickes' assumption that the three-year statute of repose created by *Lampf* extinguishes liability is incorrect. The Fifth Circuit held that the *Lampf* statute of repose only eliminates a remedy; it does not extinguish the right to recover for violations of § 10(b):

The *Lampf* Court strove for crystal clarity in stating its holding: "[T]he governing standard for an action under § 10(b) [is] the language of § 9(e) of the 1934 Act, 15 U.S.C. § 78i(e)." [501] U.S. at [364] n. 9, 111 S.Ct. at 2782 n. 9. Section 9(e) as passed by Congress in 1934, provides:

> No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.

This language unequivocally bars an action to enforce a liability, and says nothing about the continued existence of that liability. Nowhere does the *Lampf* Court even imply that the absolute three-year statute of repose extinguishes liability under § 10(b). We hold that it does not.

*Pacific Mutual Life Insurance v. First Republicbank,* 997 F.2d 39, 52 (5th Cir.1993), *aff'd by equally divided court sub nom. Morgan Stanley & Company, Incorporated v. Pacific Mutual Life Insurance Company,* — U.S. ——, 114 S.Ct. 1827, 128 L.Ed.2d 654 (1994). A contrary holding would have called into question the constitutionality of § 27A of the 1934 Exchange Act; if *Lampf* substantively extinguishes claims, § 27A's revival of § 10(b) claims that had been extinguished by *Lampf's* three-year repose period might violate due process. *See id.* at 51. The Fifth Circuit's reasoning is in accord with decisions in this district that have upheld the constitutionality of § 27A against similar due process attacks. *See Brown v. Hutton Group,* 795 F.Supp. 1307, 1315 (S.D.N.Y.1992) (rejecting argument that § 27A "unconstitutionally divests defendants of the benefit of dismissal" because "[f]ederal courts have long held that unless the passage

---

12. Indeed, although not addressing Wickes' objections, decisions in this district have allowed amendments adding § 10(b) claims otherwise untimely under *Lampf* to relate back. *See Sommer v. PMEC Associates and Company Limited,* 1993 WL 361660 at *6 (S.D.N.Y. Sept. 14, 1993) ("the Court finds that the federal securities law claim [under § 10(b) of the Exchange Act] that Plaintiffs now seek to add to their complaint relates back to the date of the complaint's original filing" pursuant to Fed.R.Civ.P. 15(c)); *Sper-*

*ber Adams Assoc. v. Jem Management Assoc.,* 1992 WL 28444 at *2 (S.D.N.Y. February 7, 1992) (holding, in case in which amended complaint adding a § 10(b) claim was filed on July 19, 1991 and more than three years after the sale at issue, that "[b]ecause the Section 10(b) claim against Muss arises from the same transaction or occurrence as the claim for common law fraud, it relates back to the filing of the original complaint.").

of the statute of limitations creates a prescriptive property right, such as title in adverse possession, Congress is free to revive a cause of action after the limitations period has expired."); *Adler v. Berg Harmon Associates,* 790 F.Supp. 1235, 1244 (S.D.N.Y.1992) (same). Although the Second Circuit has not yet ruled on this issue, it has expressed approval for the reasoning of *Brown v. Hutton Group, see Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb, Inc.,* 967 F.2d 742, 751 n. 6 (2nd Cir.1992), and the Court concurs in the conclusion of these courts that *Lampf* does not extinguish substantive rights.

### 2. *Lampf* does not apply to the Fourth Complaint.

■ The timeliness of § 10(b) claims relating back to the Fourth Complaint is not governed by *Lampf.* Section 27A of the 1934 Exchange Act, reproduced in its entirety in the margin, provides that *Lampf* does not apply to private civil actions implied under § 10(b) that were commenced prior to June 20, 1991, the date *Lampf* was decided.[13] According to the language of the statute itself, the only motion required by § 27A is a motion to reinstate a dismissed claim; no motion need be made to avoid the application of *Lampf* to a § 10(b) claim that was not dismissed after the Supreme Court decided *Lampf.* Since no § 10(b) claims asserted against Wickes or Sigoloff in MDL 732 have ever been dismissed, no motion for reinstatement is necessary.[14]

Instead, the timeliness of the § 10(b) claims must be determined according to the analysis of pre-*Lampf* law. *See In re Integrated Resources Real Estate Securities Litigation,* 815 F.Supp. 620 (S.D.N.Y.1993) (outlining the steps necessary to determine the applicable statute of limitations). Prior to *Lampf, Ceres Partners v. GEL Associates,* 918 F.2d 349 (2nd Cir.1990), decided on November 8, 1990, governed the timeliness of implied private actions under § 10(b). As did *Lampf, Ceres* borrowed the three-year statute of repose applicable to private actions under § 9(e) of the Securities and Exchange Act of 1934. However, *Ceres* does not necessarily apply to actions commenced prior to November 8, 1990:

> [Under *Welch v. Cadre Capital,* 923 F.2d 989 (2nd Cir.1991),] the retroactive application of *Ceres* must be determined on a case-by-case basis according to a three-part test laid out in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).... The three parts of the test hinge on 1) whether the new rule [announced in *Ceres*] was "clearly foreshadowed" at the time the relevant complaint were [sic] filed, 2) whether retroactive application of the statute of limitations would serve the purpose of the new rule, and 3) whether the equities weighed in favor of nonretroactivity.

*In re Integrated Resources,* 815 F.Supp. at 634. If *Ceres* does not apply retroactively, the court should follow the pre-*Ceres* practice of applying the forum state's most analogous statute of limitation. When the forum state

13. **Special provision relating to statute of limitations on private causes of action**
   (a) **Effect on pending causes of action**
   The limitation period for any private civil action implied under section 78j(b) of this title [*i.e.,* § 10(b) of the Exchange Act] that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
   (b) **Effect on dismissed causes of action**
   Any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991—
      (1) which was dismissed as time barred subsequent to June 19, 1991, and
      (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including

principles of retroactivity, as such laws existed on June 19, 1991,
   shall be reinstated on motion by the plaintiff not later than 60 days after December 19, 1991.
   15 U.S.C. § 78aa–1 (1991).

14. *Grondahl v. Merritt & Harris, Inc.,* 964 F.2d 1290 (2nd Cir.1992), cited by counsel for Wickes as holding that the plaintiffs must make a motion in order to avoid retroactive application of *Lampf,* is not to the contrary. *Grondahl* involved a § 10(b) claim dismissed as time-barred on November 22, 1991; nothing in the court's opinion suggests that claimants whose pre-*Lampf* § 10(b) claims have not been dismissed must make any motion to avoid application of *Lampf* to their claims.

is New York, the relevant statutes of limitation depend on the residence of the plaintiffs at the time of their injury:

> In the case of plaintiffs who were residents of New York State at the time of the injury, the former period set forth in N.Y.Civ.Prac.L. & R. § 213(8) (McKinney 1990 Supp.) applies: The action must be commenced within six years of the commission of the alleged fraud or two years from the time the alleged wrongdoing was, or with reasonable diligence should have been, discovered....
>
> In those cases where the plaintiffs were nonresidents [of the forum state, here, New York] at the time the cause of action accrued, N.Y.Civ.Prac.L. & R. § 202 (McKinney 1990) applies.
>
> Under this "borrowing statute," a court is to apply the limitations period "of either [New York] or the place without [New York] where the cause of action accrued," whichever is shorter.

*Id.* at 633–34. The place "where the cause of action accrued" for purposes of determining the limitations period applicable to nonresidents of New York is the residence of the plaintiff at the time of the plaintiff's injury. *See id.* at 634 (quoting *Morin v. Trupin,* 799 F.Supp. 342, 347 (S.D.N.Y.1992)).

Following this analysis, the Court holds that *Ceres* does not apply retroactively to the Fourth Complaint. The uniform statute of limitations established by *Ceres* was not foreseeable on the date the Fourth Complaint was filed. *See Rabin v. Fivzar Associates,* 801 F.Supp. 1045, 1049–50 (S.D.N.Y.1992) (holding that the limitations scheme established in *Ceres* was not clearly foreshadowed by case law decided as of July, 1990). Retroactive application of *Ceres* will not further the purposes of the limitations period announced therein. *See Welch v. Cadre Capital,* 923 F.2d 989, 995 (2nd Cir.) ("Because [statutes of limitation] serve primarily individual, rather than institutional, interests and do so by giving potential litigants prior notice of their rights, application of a limitations period not yet in existence at the time suit

was commenced clearly does not further either of the competing interests [served by statutes of limitation]."), *vacated and remanded sub nom. Northwest Savings Bank v. Welch,* 501 U.S. 1247, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). The equities of this case weigh against retroactive application of *Ceres,* because the plaintiffs should be permitted to obtain a determination of the merits of their claims and because neither Wickes nor Sigoloff has shown that the plaintiffs should have filed the Fourth Complaint any earlier than they did. *See Lawrence v. Cohn,* 816 F.Supp. 191, 196 (S.D.N.Y.1993) ("plaintiffs' [sic] make a strong case for application of the old rule, since the new rule would bar their claim. Plaintiffs did not delay in any attempt to maneuver a procedural advantage. Nor has defendant alleged that the timing of plaintiffs' federal filing has prejudiced him in any way.").

■ However, on the record now before the Court, the applicable statute of limitations under pre-*Ceres* law cannot be determined. Neither the Fourth Complaint or the Fifth Complaint alleges the residence of the plaintiffs at the time they converted their holdings of Wickes Preferred, nor has any party provided this information in its motion papers. The parties have not explained when the plaintiffs should have discovered the alleged securities fraud. Still, the Fourth Complaint was certainly filed within the six-year period of repose established by the analogous New York limitations period. Thus, § 10(b) claims relating back to the Fourth Complaint are not clearly untimely, so the proposed amendment is not facially futile.[15]

### B. The civil RICO claims against Wickes and Sigoloff are not futile.

■ The supposed pleading deficiencies in Count 28 on which Wickes bases its contention that the proposed amendment would be futile are that: (1) the enterprise is not clearly defined, (2) the predicate acts are not specified with sufficient detail, (3) there are no allegations that Wickes directed the en-

---

**15.** This opinion is without prejudice to a future motion, if the defendants wish to make one, seeking dismissal of the § 10(b) claims on the grounds of untimeliness under pre-*Ceres* limitations law.

terprise, (4) the enterprise is not distinct from the pattern of activity asserted, (5) the four-month period over which the predicate acts occurred is insufficiently long to establish the existence of a pattern of racketeering, and (6) the predicate acts of securities fraud fail for lack of direct reliance, the plaintiffs having pled only that class members acted in reliance on the integrity of the market. In addition, Sigoloff separately contends that the plaintiffs lack evidence connecting him to the alleged RICO conspiracy, and he has made a motion for summary judgment largely on that ground. The first two supposed deficiencies identified by Wickes clearly represent inadequately detailed pleading and do not necessarily mean that the civil RICO claim is without merit. In light of the allegations in the Fifth Complaint, the third through sixth deficiencies identified above may also raise nothing more than an objection to the lack of pleading detail, because the plaintiffs have alleged, albeit in conclusory fashion, the elements of civil RICO that Wickes claims are lacking in the Complaint.[16] Wickes does not explain whether it believes that these supposed deficiencies would merit dismissal under Rule 9(b) or whether they reflect a fundamental deficiency in the evidence that the plaintiffs will be able to present at trial.

None of the deficiencies to which Wickes has adverted establish that the civil RICO claims are clearly frivolous or legally insufficient on their face, nor does Sigoloff's challenge to the factual underpinnings of the civil RICO claim against him. To the extent that Wickes is suggesting that the civil RICO allegations are subject to dismissal under Rule 9(b), Fed.R.Civ.P., for inadequate specificity, Wickes' objections amount to a demand that the plaintiffs plead the civil RICO claims in greater detail; dismissal with prejudice on Rule 9(b) grounds would not be warranted. *See Luce v. Edelstein*, 802 F.2d 49, 56 (2nd Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.") (quoting 2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 9.03 at 9–34 (2nd ed. 1986)). To the extent that Wickes and Sigoloff are suggesting that the plaintiffs cannot prove the allegations they have made, they are raising issues of fact better left for decision on a properly briefed motion for summary judgment. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2nd Cir.1979) ("where, as here, the alleged futility of the amendment rests on findings of fact, we prefer to let the district court resolve the factual issues. If the documents referred to by Chemical [as demonstrating futility] are as decisive as it claims, ... the only prejudice it suffers from allowing appellant to amend is the inconvenience and expense of submitting these documents in support of a motion for summary judgment. This burden ... hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits."); *WIXT Television, Inc. v. Meredith Corp.*, 506

---

**16.** Paragraph 826 of the Fifth Complaint alleges that the Class V Defendants (which, under the proposed amendment, would include Wickes and Sigoloff) "conducted or participated in the conduct ... of an enterprise." This allegation tracks the statutory language from which the Supreme Court concluded that the verbs "conduct" and "participate" in the civil RICO statute required proof of direction of the enterprise. *See Reves v. Ernst & Young*, —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Paragraph 826 contradicts Wickes' contention that the enterprise is not distinct from the pattern of racketeering activity alleged: "This enterprise included at least one or more of the following: (a) Drexel and Milken; and (b) individuals and entities who, together or in some combination, associated in fact and functioned as a continuing unit *with an existence beyond that necessary to commit the predicate acts:...*" ¶ 826 (emphasis added). Likewise, paragraph 825 of the Fifth Complaint

contradicts Wickes' characterization of the pattern of racketeering activity alleged as being of short duration: "The transactions conducted pursuant to the racketeering conspiracy continued indefinitely over an extended period of time with no obvious terminating goal or date." Finally, Wickes' sixth objection assumes that the plaintiffs are alleging that they did not directly rely on any fraudulent statements. This assumption is incorrect; indeed, one of the paragraphs of the Fifth Complaint cited by the defendants in support of this argument alleges, in addition to reliance on the integrity of the market, actual direct reliance on Wickes' misrepresentations. *See* Complaint at ¶ 856 ("In reliance upon the integrity of the market for Wickes securities *and defendants' misrepresentations and omissions*, ... Plaintiffs and the other members of the sub-class were forced to and did redeem, convert and/or sell their shares of Wickes Preferred.") (emphasis added).

F.Supp. 1003, 1010 (S.D.N.Y.1980) ("Although [the party opposing the motion for leave to amend] argues that plaintiff's proposed amended complaint is unsupported by the facts and fails to state a claim upon which relief can be granted, these matters can best be considered in the context of the motions to dismiss and for summary judgment.").

### C. The proposed amendment is not offered in bad faith and will not prejudice Wickes or Sigoloff.

Wickes' contention that the plaintiffs have proposed the clarification in bad faith rests on the assumption that the plaintiffs drafted the Fourth and Fifth Complaints in order to defeat federal subject matter jurisdiction but now seek for tactical reasons to undo their supposed decision to rely solely on state law. The Court has already found that the plaintiffs did not draft the Complaints in order to avoid relying on federal law. Hence, the proposed amendment is not offered in bad faith.

Wickes asserts that it will suffer four forms of prejudice from the proposed amendment: (1) the threat of treble damages and the ignominy of being labelled a "racketeer" that will follow from being named a defendant in the civil RICO count, (2) the need to reopen discovery to meet the supposedly new claims against Wickes, (3) denial of the benefits of *Mirkin v. Wasserman,* a 1993 California Supreme Court case that held that the fraud-on-the-market theory could not be used to establish reliance for purposes of proving California common law fraud, and (4) frustration of Wickes' expectation that it would only participate in MDL 732's discovery processes and would not be tried here.

None of these alleged bases of prejudice are availing. In light of the Court's finding that the Fifth Complaint already states civil RICO claims against Wickes and Sigoloff, the proposed amendment does not increase these defendants' potential liability. Nor will these defendants' reputations suffer any significant additional harm once the amendment clarifies that they are RICO defendants, because the Fifth Complaint already alleges their involvement in a conspiracy with the Class V Defendants.

Wickes' claim that it will suffer prejudice because it will have to conduct additional discovery can be addressed by an extension of time for discovery, if warranted. No date has yet been set for trial, so the Court's docket can accommodate any necessary extensions. However, the proposed amendment adds no factual allegations to the Fifth Complaint, so it is not apparent at this time what additional discovery would be necessary.

Wickes' claim that it will suffer prejudice if this case is tried in the Southern District of New York, because it fears that it will be denied the benefit of *Mirkin v. Wasserman,* is without merit. This case does not substantially aid Wickes' defense. Wickes claims that this case eviscerates plaintiffs' fraud claims because it determined that the fraud-on-the-market theory of reliance is inapplicable to California fraud claims. However, fraud-on-the-market is only one of the theories of reliance that plaintiffs advance, and in opposition to Wickes' motion for summary judgment, presently before this Court, the plaintiffs have offered evidence of direct reliance to support their fraud claims under California law.

Finally, Wickes' contention that it will be prejudiced because it believed that it was participating in MDL 732 only for discovery purposes is unsupported by its conduct in this litigation, which evinces no understanding on Wickes' part that its role in MDL 732 was so limited. The text of MDL Order No. 55, in which both Wickes and Sigoloff consented to the addition of Citron and Weinberger as plaintiffs in MDL 732, suggests that no agreement limiting Citron and Weinberger to taking discovery in MDL 732 was ever concluded, because the stipulation contemplated that these plaintiffs would pursue all of their claims in this forum. Moreover, as the Court has noted, MDL Order No. 56, which certified Subclass 3 of Class V, is inconsistent with Wickes' contention that the plaintiffs came to this forum simply for discovery, yet both Wickes and Sigoloff consented to entry of this order as well.

### Conclusion

Leave to amend the Fifth Complaint is granted. The plaintiffs have demonstrated

that the amendment simply clarifies claims already asserted in the Fifth Complaint against Wickes and Sigoloff, and the defendants have failed to show that the proposed amendment would not relate back to a timely-filed Fourth Complaint or that the proposed amendment would prejudice them or is offered in bad faith. Footnote 4 to ¶ 801 of the Fifth Complaint shall be deemed to be amended upon filing of this opinion to read as follows:

> For the purpose of Counts XXVI, XXVIII, XXX and XXXI and the headings thereof, the term "Class V Defendants" shall be deemed to also refer to the Wickes Defendants, as defined in ¶ 134 of this Fifth Complaint, with regard to the Wickes transaction.

SO ORDERED.